**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DONNA KSHIR,** | : | **Civil No.  1:19-CV-1754** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **ANDREW SAUL,** | : | |
| **Commissioner of Social Security,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM OPINION

### I.    Introduction

The Supreme Court has recently underscored for us the limited scope of our

review when considering Social Security appeals, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout
> administrative law to describe how courts are to review agency
> factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——,
> 135 S. Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-
> evidence standard, a court looks to an existing administrative record
> and asks whether it contains "sufficien[t] evidence" to support the
> agency's factual determinations. Consolidated Edison Co. v. NLRB,
> 305 U.S. 197, 229, 59 S. Ct. 206, 83 L.Ed. 126 (1938) (emphasis
> deleted). And whatever the meaning of "substantial" in other contexts,
> the threshold for such evidentiary sufficiency is not high. Substantial
> evidence, this Court has said, is "more than a mere scintilla." Ibid.; see,
> e.g., Perales, 402 U.S. at 401, 91 S. Ct. 1420 (internal quotation marks
> omitted). It means—and means only—"such relevant evidence as a
> reasonable mind might accept as adequate to support a conclusion."
> Consolidated Edison, 305 U.S. at 229, 59 S. Ct. 206. See Dickinson v.
> Zurko, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L.Ed.2d 143 (1999)
> (comparing the substantial-evidence standard to the deferential clearly-
> erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

In the instant case, Donna Kshir applied for supplemental security income benefits under Title XVI of the Social Security Act on October 24, 2016, alleging that she had been disabled since April 1, 2009, due to degenerative disc disease, radiculopathy, and a left shoulder impingement. (Tr. 18, 20). Yet for much of this expansive period of alleged disability, Kshir reported an active lifestyle which included regularly walking three miles a day, cardio exercise, child care responsibilities, and participating in Zumba classes. (Tr. 256-61). Further, medical examination of Kshir over the years often reported intact range of motion and motor/sensory responses. (Tr. 264, 273, 278, 282, 386, 389). While Kshir's complaints of back and shoulder pain became more pronounced after she suffered a fall in October of 2016, even after this incident, x-rays and MRI examinations of her shoulder and back were largely unremarkable, and she received conservative treatment for these conditions. (Tr. 285-95, 353-55, 373-74). These medical records led a state agency expert to opine that Kshir could perform light work. (Tr. 78-87). After a consideration of the medical records and opinion evidence, the Administrative Law Judge ("ALJ") who reviewed this case concluded that Kshir could perform a range of light work with limitations and denied her disability application. (Tr. 18-26).

2

Mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,' " Biestek, 139 S. Ct. at 1154, we find that substantial evidence supported the ALJ's findings in this case. Therefore, for the reasons set forth below, we will affirm the decision of the Commissioner denying this claim.

## II.    Statement of Facts and of the Case

Donna Kshir applied for supplemental security income benefits under Title XVI of the Social Security Act on October 24, 2016, alleging that she had been disabled since April 1, 2009, due to degenerative disc disease, radiculopathy, and a left shoulder impingement. (Tr. 18, 20). Kshir's claimed period of disability spanned some seven years, from 2009 through 2016. At the time of the alleged onset of this disability, Kshir was in her late 30's and by the time of the agency adjudication of this claim she was in her mid-40s, making her a younger worker under the Commissioner's regulations. (Tr. 25). She had a high school education and prior employment as a nursing aide and free-lance writer. (Id.)

According to her application, Kshir's disabling medical conditions included degenerative disc disease, radiculopathy, and a left shoulder impingement. (Tr. 18, 20). While it was apparent from Kshir's medical records that she had periodically complained of back pain since the late 1990's, for a number of years following the claimed onset of her disability in April of 2009, medical records and Kshir's

activities of daily living seemed to conflict with her claim of total disability. For example, in 2013 and 2014, in multiple medical encounters Kshir described a physically active lifestyle to care-givers. According to Kshir, at this time she cared for a grandchild, walked 3 miles per day, attended Zumba classes, and actively engaged in cardio exercises. (Tr. 256-61, 265). These treatment records also indicated that through the Fall of 2016, Kshir's range of motion was largely intact, (Tr. 264, 273, 278, 282), and her reports of leg pain and chronic lumbago were treated in a conservative fashion through heat, ice, and ibuprofen. (Tr. 268). These records further indicated that Kshir had become interested in applying for disability benefits as early as October 2015. (Tr. 269).

The adult function report completed by Kshir in November of 2016 as part of her disability application also suggested that she retained the ability to perform some work. (Tr. 150-57). In that report, Kshir stated that she could drive, prepare, meals, shop, and had no problems with her personal care. (Id.)

In October of 2016, Kshir suffered a fall in a grocery store and reported both a left shoulder injury, hip injury, and increased back pain as a result of this fall. (Tr. 285-87, 290-92). Kshir continued to complain of shoulder and back pain throughout the winter, spring, and summer of 2017. (Tr. 377-86). However, objective testing did not identify impairments which were consistent with Kshir's reported level of pain. Care-givers continued to report that Kshir's sensory and motor skills were

intact. (Tr. 386, 389). Moreover, radiological examinations conducted in October of 2016 and February of 2017 reported that Kshir's hip and shoulder were normal. (Tr. 294-95, 353-55, 373-74). Other testing in October 2016 found that Kshir experienced moderate stenosis and mild degenerative changes in her spine, but concluded that there was no need for neurosurgical management of her condition. (Tr. 298-303). Instead, only conservative treatment was recommended for Kshir. (Tr. 324, 391).

Given this clinical history, in January of 2017 a state agency expert, Dr. Angela Walker, opined that Kshir retained the residual functional capacity to perform light work. (Tr. 78-87). In April of 2018, a physician assistant who had cared for Kshir, Amanda Jones-Sutliff, reached a contrary conclusion, opining that Kshir was unable to perform even sedentary work due to her back and shoulder impairments. (Tr. 405-11).

It is against this clinical backdrop, marked by conflicting evidence and opinions, that a hearing was held on this disability application on May 21, 2018, where Kshir appeared and testified along with a Vocational Expert. (Tr. 56-77). Following this hearing, on September 19, 2018, the ALJ issued a decision denying this application for benefits, finding that Kshir remained capable of performing a range of light work jobs in the national economy. (Tr. 15-26).

In that decision, the ALJ first concluded that Kshir had not engaged in any substantial gainful activity since the date of her SSI application in October of 2016. (Tr. 20). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Kshir's degenerative disc disease, radiculopathy, and a left shoulder impingement were severe impairments. (Id.) At Step 3, the ALJ determined that none of these impairments met or medically equaled the severity of one of the listed impairments. (Tr. 21).

Between Steps 3 and 4, the ALJ fashioned a residual functional capacity ("RFC"), which considered all of Kshir's limitations from her impairments and found that she could perform a range of light work. (Tr. 21-22). In making this RFC determination, the ALJ considered all of the medical and opinion evidence in this case, as well as Kshir's self-reported activities of daily living. (Tr. 21-24). Thus, the ALJ noted that Kshir's active exercise program, child care duties, and activities of daily living all undermined her claim that she had been disabled since April 2009. (Tr. 22-23). The ALJ also recounted Kshir's largely unremarkable treatment history, her conservative course of treatment, and her benign radiological findings as evidence which undercut her claim of total disability. (Tr. 23). Given these clinical records, test results, and Kshir's self-reported activities of daily living, the ALJ concluded that the opinion of the state agency expert, Dr. Walker, deserved greater

weight than the extreme views expressed by Kshir's treating physician assistant, Ms. Jones-Sutliff. (Tr. 24).

Having arrived at this RFC assessment based upon an evaluation of these clinical records, medical opinions, and the claimant's statements, the ALJ found at Step 5 that there were a number of light work jobs in the national economy that Kshir could perform. (Tr. 24-25). Accordingly, the ALJ concluded that Kshir did not meet the stringent standard for disability set by the Social Security Act and denied her disability claim. (Id.)

This appeal followed. (Doc. 1). On appeal, Kshir contends the ALJ erred in considering  medical evidence which pre-dated October 2015, one year prior to the submission of her disability claim. Kshir takes this position even though her disability claim asserted an onset of disability which began in April 2009. Kshir also contends that the ALJ erred in giving greater weight to the opinion of the state agency expert, Dr. Walker, than the views expressed by Kshir's treating physician assistant, Ms. Jones-Sutliff. This case is fully briefed and is, therefore, ripe for resolution. For the reasons set forth below, under the deferential standard of review that applies here, we will affirm the decision of the Commissioner.

## III.   Discussion

### A.   Substantial Evidence Review – the Role of this Court

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. See 42 U.S.C. §405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is

supported by substantial evidence the court must scrutinize the record as a whole."

Leslie v. Barnhart, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has recently underscored for us the limited scope of our review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); Burton v. Schweiker, 512 F.

Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford, 399 F.3d at 552). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir. 2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use

particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

## B.      Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); see also 20 C.F.R. §§404.1505(a), 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §§404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is

engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and have suggested that "[r]arely can a

decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013) (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that: "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where a well-supported medical source has opined regarding limitations which would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when

making a disability determination, particularly when those opinions support a finding of disability. In contrast, when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living to fashion an RFC, courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006); Cummings, 129 F. Supp. 3d at 214–15. In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her from engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show

that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience, and RFC. 20 C.F.R. §§404.1512(f), 416.912(f); Mason, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-07. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 433 (3d Cir. 1999).

## C.    Legal Benchmarks for the ALJ's Assessment of Medical Opinion Evidence and Lay Testimony

The Commissioner's regulations also set standards for the evaluation of medical evidence, and define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite

impairments(s), and [a claimant's] physical or mental restrictions." 20 C.F.R. §404.1527(a)(2). Regardless of its source, the ALJ is required to evaluate every medical opinion received. 20 C.F.R. § 404.1527(c).

In deciding what weight to accord competing medical opinions and evidence, the ALJ is guided by factors outlined in 20 C.F.R. § 404.1527(c). "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." SSR 96-6p, 1996 WL 374180 at *2. Treating sources have the closest ties to the claimant, and therefore their opinions generally entitled to more weight. See 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources . . . ."); 20 C.F.R. § 404.1502 (defining treating source). Under some circumstances, the medical opinion of a treating source may even be entitled to controlling weight. 20 C.F.R. § 404.1527(c)(2); see also SSR 96-2p, 1996 WL 374188 (explaining that controlling weight may be given to a treating source's medical opinion only where it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and it is not inconsistent with the other substantial evidence in the case record).

Where no medical source opinion is entitled to controlling weight, the Commissioner's regulations direct the ALJ to consider the following factors, where applicable, in deciding the weight given to any non-controlling medical opinions:

length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; the extent to which the source presented relevant evidence to support his or her medical opinion, and the extent to which the basis for the source's conclusions were explained; the extent to which the source's opinion is consistent with the record as a whole; whether the source is a specialist; and, any other factors brought to the ALJ's attention. 20 C.F.R. § 404.1527(c).

Oftentimes, as in this case, an ALJ must evaluate medical opinions and records tendered by a number of different medical sources. Judicial review of this aspect of ALJ decision-making is guided by several settled legal tenets. First, when presented with a disputed factual record, it is well-established that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Thus, when weighing competing medical opinions "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.' " Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Mason, 994 F.2d at 1066). Therefore, provided that the decision is accompanied by an adequate, articulated rationale, it is the province and the duty of the ALJ to choose which medical opinions and evidence deserve greater weight.

Further, in making this assessment of medical evidence:

An ALJ is [also] entitled generally to credit parts of an opinion without crediting the entire opinion. See Thackara v. Colvin, No. 1:14–CV–

> 00158–GBC, 2015 WL 1295956, at *5 (M.D.Pa. Mar. 23, 2015); Turner v. Colvin, 964 F. Supp. 2d 21, 29 (D.D.C. 2013) (agreeing that "SSR 96–2p does not prohibit the ALJ from crediting some parts of a treating source's opinion and rejecting other portions"); Connors v. Astrue, No. 10–CV–197–PB, 2011 WL 2359055, at *9 (D.N.H. June 10, 2011). It follows that an ALJ can give partial credit to all medical opinions and can formulate an RFC based on different parts from the different medical opinions. See e.g., Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015).

Durden v. Colvin, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016).

Case law also cautions courts to take into account the fact that state agency non-treating and non-examining source opinions are often issued at an early stage of the administrative process. While this fact, standing alone, does not preclude consideration of the agency doctor's opinion, see Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011), it introduces another level of caution that should be applied when evaluating reliance upon such opinions to discount treating and examining source medical statements. Therefore, if a claimant can show that a state agency non-treating and non-examining opinion did not take into account material medical developments which have occurred after the opinion was rendered, that opinion often cannot be relied upon by the Commissioner to carry its burden of proof. See Foose v. Berryhill, No. 3:17-CV-00099, 2018 WL 1141477, at *7 (M.D. Pa. Mar. 2, 2018); Batdorf v. Colvin, 206 F. Supp. 3d 1012, 1023 (M.D. Pa. 2016). On this score, however, a showing of material, intervening medical developments

which occurred after the agency expert's opinion is essential. The mere passage of time between the agency expert opinion and the ALJ's decision will not suffice.

Similar considerations govern an ALJ's evaluation of lay testimony. When evaluating lay testimony regarding a claimant's reported degree of disability, we are reminded that:

> [T]he ALJ must necessarily make certain credibility determinations, and this Court defers to the ALJ's assessment of credibility. See Diaz v. Comm'r, 577 F.3d 500, 506 (3d Cir. 2009) ("In determining whether there is substantial evidence to support an administrative law judge's decision, we owe deference to his evaluation of the evidence [and] assessment of the credibility of witnesses . . . ."). However, the ALJ must specifically identify and explain what evidence he found not credible and why he found it not credible. Adorno v. Shalala, 40 F.3d 43, 48 (3d Cir. 1994) (citing Stewart v. Sec'y of Health, Education and Welfare, 714 F.2d 287, 290 (3d Cir. 1983)); see also Stout v. Comm'r, 454 F.3d 1050, 1054 (9th Cir. 2006) (stating that an ALJ is required to provide "specific reasons for rejecting lay testimony"). An ALJ cannot reject evidence for an incorrect or unsupported reason. Ray v. Astrue, 649 F. Supp. 2d 391, 402 (E.D. Pa. 2009) (quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993)).

Zirnsak v. Colvin, 777 F.3d 607, 612–13 (3d Cir. 2014).

Yet, it is also clear that:

> Great weight is given to a claimant's subjective testimony only when it is supported by competent medical evidence. Dobrowolsky v. Califano, 606 F.2d 403, 409 (3d Cir. 1979); accord Snedeker v. Comm'r of Soc. Sec., 244 Fed. App'x 470, 474 (3d Cir. 2007). An ALJ may reject a claimant's subjective testimony that is not found credible so long as there is an explanation for the rejection of the testimony. Social Security Ruling ("SSR") 96–7p; Schaudeck v. Comm'r of Social Security, 181 F.3d 429, 433 (3d Cir. 1999). Where an ALJ finds that there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the

individual's pain or other symptoms, however, the severity of which is not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

McKean v. Colvin, 150 F. Supp. 3d 406, 415–16 (M.D. Pa. 2015) (footnotes omitted). Thus, we are instructed to review an ALJ's evaluation of a claimant's subjective reports of pain under a standard of review which is deferential with respect to the ALJ's well-articulated findings but imposes a duty of clear articulation upon the ALJ so that we may conduct meaningful review of the ALJ's conclusions.

In the same fashion that medical opinion evidence is evaluated, the Social Security Rulings and Regulations provide a framework under which the severity of a claimant's reported symptoms are to be considered. 20 C.F.R. §§ 404.1529, 416.929; SSR 16–3p. It is important to note that though the "statements of the individual concerning his or her symptoms must be carefully considered, the ALJ is not required to credit them." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 363 (3d. Cir. 2011) (referencing 20 C.F.R. § 404.1529(a) ("statements about your pain or other symptoms will not alone establish that you are disabled.")). It is well-settled in the Third Circuit that "[a]llegations of pain and other subjective symptoms must be supported by objective medical evidence." Hantraft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999) (referring to 20 C.F.R. § 404.1529). When evaluating a claimant's symptoms, the ALJ must follow a two-step process in which the ALJ resolves whether a medically determinable impairment could be the cause of the symptoms

alleged by the claimant, and subsequently must evaluate the alleged symptoms in consideration of the record as a whole. SSR 16-3p.

First, symptoms, such as pain or fatigue, will only be considered to affect a claimant's ability to perform work activities if such symptoms result from an underlying physical or mental impairment that has been demonstrated to exist by medical signs or laboratory findings. 20 C.F.R. §§ 404.1529(b), 416.929(b); SSR 16–3p. During the second step of this credibility assessment, the ALJ must determine whether the claimant's statements about the intensity, persistence, or functionally limiting effects of his or her symptoms are substantiated based on the ALJ's evaluation of the entire case record. 20 C.F.R. § 404.1529(c), 416.929(c); SSR 16–3p. This includes but is not limited to: medical signs and laboratory findings, diagnosis and other medical opinions provided by treating or examining sources, and other medical sources, as well as information concerning the claimant's symptoms and how they affect his or her ability to work. Id. The Social Security Administration has recognized that individuals may experience their symptoms differently and may be limited by their symptoms to a greater or lesser extent than other individuals with the same medical impairments, signs, and laboratory findings. SSR 16–3p.

Thus, to assist in the evaluation of a claimant's subjective symptoms, the Social Security Regulations identify seven factors which may be relevant to the assessment of the severity or limiting effects of a claimant's impairment based on a

claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). These factors include: activities of daily living; the location, duration, frequency, and intensity of the claimant's symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his or her symptoms; treatment, other than medication that a claimant has received for relief; any measures the claimant has used to relieve his or her symptoms; and, any other factors concerning the claimant's functional limitations and restrictions. Id.; see George v. Colvin, No. 4:13–CV–2803, 2014 WL 5449706, at *4 (M.D. Pa. Oct. 24, 2014); Koppenaver v. Berryhill, No. 3:18-CV-1525, 2019 WL 1995999, at *9 (M.D. Pa. Apr. 8, 2019), report and recommendation adopted sub nom. Koppenhaver v. Berryhill, No. 3:18-CV-1525, 2019 WL 1992130 (M.D. Pa. May 6, 2019); Martinez v. Colvin, No. 3:14-CV-1090, 2015 WL 5781202, at *8–9 (M.D. Pa. Sept. 30, 2015).

### D.   The ALJ's Decision in this Case is Supported by Substantial Evidence.

In this setting, we are mindful that we are not free to substitute our independent assessment of the evidence for the ALJ's determinations. Rather, we must simply ascertain whether the ALJ's decision is supported by substantial evidence, a quantum of proof which is less than a preponderance of the evidence but more than a mere scintilla, Richardson v. Perales, 402 U.S. 389, 401 (1971), and "does not mean a large or considerable amount of evidence," Pierce v. Underwood,

487 U.S. 552, 565 (1988), but rather "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019). Judged against these deferential standards of review, we find that substantial evidence supported the ALJ's decision that Kshir was not entirely disabled.

As we have noted, Kshir first argues that the ALJ erred in considering medical evidence which pre-dated October 2015, one year prior to the submission of her disability claim. The difficulty with this argument, however, is that it ignores the content of Kshir's disability claim, which asserted that she had experienced an onset of disability in April of 2009. Given the period of disability claimed by Kshir, the ALJ was obliged to consider the medical record as it related to this time frame which Kshir described as the period in which she was totally disabled. When this evidence was considered, medical records and Kshir's activities of daily living seemed to conflict with her claim of total disability. For example, in 2013 and 2014, in multiple medical encounters Kshir described a physically active lifestyle to care-givers. According to Kshir, at this time she cared for a grandchild, walked 3 miles per day, attended Zumba classes, and actively engaged in cardio exercises. (Tr. 256-61, 265). These treatment records also indicated that through the Fall of 2016, Kshir's range of motion was largely intact, (Tr. 264, 273, 278, 282), and her reports of leg pain

and chronic lumbago were treated in a conservative fashion through heat, ice, and ibuprofen. (Tr. 268).

Thus, the ALJ was obliged by Kshir's claim that she had been completely disabled since April 2009 to examine her medical history during this time frame. That examination disclosed substantial evidence which undercut Kshir's claim of on-going disability during this period. The ALJ did not err in considering this evidence.

Likewise, Kshir's argument that the ALJ erred in giving greater weight to the opinion of the state agency expert, Dr. Walker, than the views expressed by Kshir's treating physician assistant, Ms. Jones-Sutliff, is unavailing. As we have noted on this score:

> [I]n determining the weight to be given to a medical source opinion, it is also well-settled that an ALJ may discount such an opinion when it conflicts with other objective tests or examination results. Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 202–03 (3d Cir. 2008). Likewise, an ALJ may conclude that discrepancies between the source's medical opinion, and the treating doctor's actual treatment notes, justifies giving a treating source opinion little weight in a disability analysis. Torres v. Barnhart, 139 Fed. App'x 411, 415 (3d Cir. 2005). Finally, "an opinion from a treating source about what a claimant can still do which would seem to be well-supported by the objective findings would not be entitled to controlling weight if there was other substantial evidence that the claimant engaged in activities that were inconsistent with the opinion." Tilton v. Colvin, 184 F. Supp. 3d 135, 145 (M.D. Pa. 2016).

Falcone v. Berryhill, No. 3:16-CV-1705, 2017 WL 7222358, at *9 (M.D. Pa. Nov. 29, 2017), report and recommendation adopted, No. 3:16CV1705, 2018 WL 646489 (M.D. Pa. Jan. 31, 2018).

In the instant case, we find that substantial evidence supported the ALJ's decision to afford less weight to the medical opinion of Physician Assistant Jones-Sutliff than to the opinion of the state agency expert, Dr. Walker. At the outset, we note that under the regulations that were in effect at the time of consideration of this claim, acceptable medical sources did not include physician assistants. Genier v. Astrue, 298 F. App'x 105, 108 (2d Cir. 2008). Rather, these medical source rules only applies to physicians, and where a disability claimant's application is supported by statements from physician assistants, this rule does not apply. Instead, the ALJ was required to only consider the physician assistant's opinion as some "other source" opinion, which should be assessed, but not given controlling weight. Applying these legal guideposts, courts frequently have held that an ALJ may properly elect to follow the consultative opinion of a non-examining physician who reviews a claimant's medical records over treating physician assistant opinions, provided the ALJ adequately explains the grounds for this determination. See e.g., Weaver v. Astrue, 353 F. App'x 151, 152 (10th Cir. 2009); Long v. Colvin, No. 1:14-CV-2192, 2016 WL 1320921, at *7 (M.D. Pa. Apr. 5, 2016); Hearn v. Colvin,

No. 3:13-CV-1229, 2014 WL 4793954, at *10 11 (M.D. Pa. Sept. 24, 2014); Wade v. Colvin, No. 13–CV–135, 2014 WL 1015719 (D. Co. 2014).

Beyond this threshold consideration, we find that other substantial evidence supported the ALJ's decision to afford less weight to the opinion of Physician Assistant Jones-Sutliff. First, the profound degree of impairment described by Ms. Jones-Sutliff was not confirmed through objective testing. Quite the contrary, that testing resulted in consistently normal findings. (Tr. 294-95, 353-55, 373-74). Since an ALJ may discount a medical opinion when it conflicts with other objective tests or examination results, this discrepancy between Ms. Jones-Sutliff's opinion and these testing results justified giving the opinion limited weight. Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 202–03 (3d Cir. 2008). In the same vein, the conservative treatment provided to Kshir by Jones-Sutliff was inconsistent with a claim of complete disability and undermined the weight to be given to this opinion which claimed that Kshir was totally disabled. Woodman v. Berryhill, No. 3:17-CV-151, 2018 WL 1056401, at *6 (M.D. Pa. Jan. 30, 2018), report and recommendation adopted, No. 3:17-CV-151, 2018 WL 1050078 (M.D. Pa. Feb. 26, 2018). Furthermore, in this case there was other substantial evidence that the claimant engaged in activities that were inconsistent with this opinion, a factor which further diminished the reliance which could be placed upon the opinion. Tilton v. Colvin, 184 F. Supp. 3d 135, 145 (M.D. Pa. 2016).

Finally, Kshir's contention that there were material, intervening medical developments that took place following the January 2017 medical opinion of the state agency expert, Dr. Walker, which were not adequately considered by the ALJ is ultimately unpersuasive. On this score, we note that Dr. Walker's opinion was issued in January of 2017. By that time, Kshir had experienced the fall which she claimed exacerbated her shoulder and back conditions, but radiological testing had not confirmed the severity of those injuries and Kshir was receiving conservative treatment from her primary care-givers. Medical records that were obtained after January of 2017 continued to confirm this conservative course of treatment for Kshir, and February 2017 radiological testing, once again, found that Kshir's hip and shoulder were essentially normal.

In order to secure a remand based upon the timing of the state agency expert opinion, it was incumbent upon Kshir to show material, intervening medical developments occurred after the agency expert's opinion since the mere passage of time between the agency expert opinion and the ALJ's decision will not suffice. See Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Kshir has presented no such proof in this case. Rather, the medical picture as it relates to Kshir's condition seems to be largely consistent both before and after Dr. Walker's January 2017 opinion. Therefore, the timing of this opinion, standing alone, does not

undermine the reliability of that medical judgment in a way which compels a remand of this case.

In this case, the ALJ was required to examine the medical evidence of record, coupled with Kshir's subjective complaints regarding her impairments, and was tasked with determining what range of work she could perform, if any. Based upon the clinical and opinion evidence as well as Kshir's self-reported activities, the ALJ found that she could perform light work. It is the right and responsibility of the ALJ to make such assessments and we find that substantial evidence, that is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Biestek, 139 S. Ct. at 1154, supported these determinations.

We further find that the ALJ's evaluation of the lay testimony complied with the requirements prescribed by the Commissioner's regulations and the law. At bottom, it appears that the plaintiff is requesting that this court re-weigh the evidence. This we may not do. See Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations"); see also Gonzalez v. Astrue, 537 F. Supp. 2d 644, 657 (D. Del. 2008) ("In determining whether substantial evidence supports the Commissioner's findings, the Court may not undertake a de novo review of the Commissioner's decision and may not re-weigh the evidence of the record") (internal citations

omitted)). Rather, our task is simply to determine whether the ALJ's decision is supported by substantial evidence, a quantum of proof which is less than a preponderance of the evidence but more than a mere scintilla, <u>Richardson</u>, 402 U.S. at 401, and "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Pierce</u>, 487 U.S. at 565.

In closing, the ALJ's assessment of the evidence in this case complied with the dictates of the law and was supported by substantial evidence. This is all that the law requires, and all that a claimant can demand in a disability proceeding. Thus, notwithstanding the argument that this evidence might have been viewed in a way which would have also supported a different finding, we are obliged to affirm this ruling once we find that it is "supported by substantial evidence, 'even [where] this court acting *de novo* might have reached a different conclusion.' " <u>Monsour Med. Ctr. v. Heckler</u>, 806 F.2d 1185, 1190–91 (3d Cir. 1986) (quoting <u>Hunter Douglas, Inc. v. NLRB</u>, 804 F.2d 808, 812 (3d Cir. 1986)). Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations, we find that substantial evidence supported the ALJ's evaluation of this case.

IV.     **Conclusion**

Accordingly, for the foregoing reasons, IT IS ORDERED that the final decision of the Commissioner denying these claims is AFFIRMED.

An appropriate order follows.

/s/ *Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

June 11, 2020